**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

TINA STILL                                                          PLAINTIFF

V.                     CASE NO. 1:10CV00044 BD

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                      DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tina Still brings this action for review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her claim

for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the

"Act").  For reasons that follow, the decision of the Administrative Law Judge ("ALJ") is

AFFIRMED.[1]

I.      **Procedural History:**

Ms. Still filed her application for DIB on November 2, 2005.  She alleged

disability since September 1, 2005, due to Crohn's disease.

After the Commissioner denied her applications at the initial and reconsideration

stages of administrative review, Ms. Still requested a hearing before an ALJ.  The ALJ

held a hearing on September 25, 2007, and Ms. Still appeared with her attorney,

Stephanie B. Wallace.  (Tr. 455-475)

---

[1] The Honorable Lesly W. Mattingly, Administrative Law Judge.

At the time of the hearing, Ms. Still was a 34-year-old with a ninth-grade education, a General Educational Development certificate, and a year of vocational training in business administration.  (Tr. 458)  She was 5'9" tall and weighed 160 pounds. Ms. Still had past work experience as an accounts payable clerk, medical records clerk, cook, factory inspector, and factory seamstress.  (Tr. 459-461)  Due to limited earnings, none of the work qualified as past relevant work.  (Tr. 18)

At the hearing, the ALJ received testimony from Ms. Still and vocational expert Elizabeth Clem.  On February 27, 2008, the ALJ issued a decision denying Ms. Still benefits.  (Tr. 12-19)  The administrative Appeals Council denied Ms. Still's request for review on May 28, 2010.  (Tr. 3-7)  She filed the current Complaint for Review of Decision (docket entry #2) on June 10, 2010.

## II.   Decision of the Administrative Law Judge:

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from

---

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied.  20 C.F.R. § 404.1520(a)(4)(iv).

2

performing any other jobs available in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)-(g).

The ALJ found that Ms. Still had not engaged in substantial gainful activity since the onset of her alleged disability.  (Tr. 14)  The ALJ found that Ms. Still's Crohn's disease was a severe impairment.  (Tr. 14)  Her migraine headaches, right hand complaints, and anxiety disorder were nonsevere.  (Tr. 14-16)  Ms. Still did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526).  (Tr. 16)

The ALJ determined that Ms. Still could perform the full range of light work.[3]  (Tr. 16-18)  Ms. Still did not have any past relevant work.  (Tr. 18)  Using the Medical-Vocational Guidelines, the ALJ found Ms. Still "not disabled."  (Tr. 18-19)

III.   **Analysis:**

A.     *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision.  *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009), 42 U.S.C. § 405(g).  "Substantial evidence is

---

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).

In reviewing the record as a whole, the Court must consider both the evidence that detracts from the Commissioner's decision, as well as the evidence that supports decision, but the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

B.     *Plaintiff's Arguments*

Ms. Still claims the findings of the ALJ are not supported by substantial evidence because the ALJ erred: (1) in finding that Ms. Still's mental impairments, migraines, and hand impairments were not severe; (2) in rejecting Ms. Still's testimony; (3) in finding that Ms. Still could perform the full range of light work; and (4) in his use of the Medical-Vocational Guidelines.  (#10, p. 10-23)

C.     *Severe Impairments*

Ms. Still argues that the ALJ erred by finding her mental impairments, migraines, and hand impairments "not severe."  A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities.  *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992).  "Basic work activities" include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; and the

mental or nonexertional functions such as capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; the use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in work routine. 20 C.F.R. § 404.1521(b)(1)-(6). The ALJ discussed each of Ms. Still's alleged severe impairments before finding them not severe. (Tr. 14-16)

     1.   *Headaches*

Ms. Still sought emergency room treatment for headaches numerous times between November 27, 2005, and November 29, 2006.[4] (Tr. 159-170, 182-220, 235-240, 251-253) Each time, Ms. Still was discharged in good condition after her headaches improved. Despite numerous outpatient referrals, it appears Ms. Still almost exclusively sought emergency care for her headaches during this time.[5]

Each emergency room visit was fairly consistent. One typical example occurred on May 15, 2006, when Ms. Still was admitted into St. Bernard's Medical Center for

---

[4] During this period, Ms. Still also sought emergency medical treatment for minor medical complaints. She sought emergency treatment after swallowing a metal nut, which she passed without difficulty. (Tr. 177-181) She went to the emergency room after injuring her left foot. (Tr. 228-230) Ms. Still's foot was moderately swollen, with moderate tenderness, no abrasions or lacerations, and no fracture or dislocation. Ms. Still sought emergency treatment after an altercation where she was hit in the face. (Tr. 231-234) She had mild tenderness of the head, with no abrasions or bleeding and no fractures or abnormalities. Ms. Still also sought emergency treatment for vomiting caused by the death of her dog. (Tr. 349-351)

[5] In appears Ms. Still sought outpatient care for her headaches once during this period on October 6, 2006. (Tr. 389)

complaints of headaches.  (Tr. 182-220)  She rated her pain at 10/10, but was alert, cooperative, and in no obvious discomfort or acute distress.  (Tr. 183)  Ms. Still reported slurred speech.  When she was admitted, however, her speech was clear, she was oriented, and she responded appropriately to questions.  (Tr. 183)

Ms. Still reported that her pain worsened with movement or activity and she had difficulty walking.  (Tr. 185, 187)  During this emergency room visit, however, Ms. Still was caught leaving the floor to smoke.  (Tr. 186)

When considering Ms. Still's migraines, the ALJ noted that Ms. Still had undergone multiple head and brain tests, all of which were normal.  (Tr. 14)  The ALJ acknowledged Ms. Still's testimony that she experienced migraines once a month and went to bed and sleep them off.  (Tr. 14, 464)

Ms. Still had been treated intermittently for headaches since November 2005.  In May of 2006, her husband reported that her symptoms were much improved.  (Tr. 185)  On November 30, 2006, a day after seeking treatment for a headache at the emergency room, Ms. Still followed up with Terry D. Hunt, M.D., at the Swifton Medical Clinic.  (Tr. 387)  Dr. Hunt noted a medical history of migraines, but diagnosed Ms. Still with headache.[6]  Dr. Hunt prescribed Demerol, and referred Ms. Still to a neurologist.  (Tr. 387)  There is no evidence in the record that Ms. Still saw a neurologist as recommended.

---

[6] Dr. Hunt used the ICD-9-CM Diagnosis Code for headache, 784.0.  There are separate ICD-9-CM Diagnosis Codes for various types of migraine diagnoses, 346.00-346.91.

There is also no medical evidence that Ms. Still complained of headaches at any point between this appointment on November 30, 2006, and the administrative hearing on September 25, 2007.

Ms. Still sought treatment for various complaints on December 1, 2006; December 8, 2006; December 14, 2006; January 18, 2007; February 21, 2007; March 27, 2007; April 13, 2007; May 3, 2007; May 24, 2007; June 14, 2007; June 26, 2007; August 16, 2007, and August 21, 2007.  (Tr. 154, 364-386)  The medical records reflect that Ms. Still did not complain of headaches at any of these appointments.  There was no treatment plan for headaches, and by May 3, 2007, Dr. Hunt stopped assessing Ms. Still with headaches altogether.  (Tr. 366, 370, 372, 373, 377, 381)

Ms. Still argues that one migraine a month would prevent her from performing sustained work activity.  (#10, p. 12)  She has failed, however, to allege the restriction of a specific work activity.  While this Court has no doubt Ms. Still suffered from occasional headaches, she failed to meet her burden of showing that the headaches would significantly limit her ability to do basis work activities.  Accordingly, there was no error in the ALJ's finding that Ms. Still's headaches were "not severe."

2.    *Mental Impairments*

Ms. Still argues that the ALJ erred in finding her alleged mental impairments "not severe."  (#10, p. 12-13)  The ALJ noted that Ms. Still had been diagnosed with anxiety disorder, and she alleged panic attacks as an impairment.  (Tr. 15)  The ALJ found,

7

however, that the alleged panic attacks did not cause more than minimal limitation in Ms. Still's ability to perform basic mental work activities.  Accordingly, the ALJ found the panic attacks nonsevere.  (Tr. 15)

Ms. Still began taking Xanax for anxiety in 1998.  Despite a long history of anxiety, the record shows that Ms. Still's panic attacks did not significantly limit her basic mental work activities in understanding, carrying out, and remembering simple instructions; the use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in work routine.  20 C.F.R. § 404.1521(b)(3)-(6).

Ms. Still reported that she attended ball games and church, regularly visited with family and friends, and shopped in stores.[7]  (Tr. 64, 73, 74)  She had no problem with attention or getting along with others, no problem with authority figures, and she was very good at following instructions.  (Tr. 65, 66, 75, 76)  Ms. Still reported that she did not handle stress or changes in routine well, but was able to perform work with this condition from 1998 until 2005, when she was diagnosed with Crohn's disease and alleged the onset of her disability.   (Tr. 66, 79)

As the ALJ noted, Ms. Still had never once sought mental health treatment or been hospitalized for her mental condition.  (Tr. 15, 80)  Instead, she sought periodic treatment

---

[7] At the administrative hearing, Ms. Still testified that she was no longer able to do any outside activity due to her need to be close to a bathroom.  (Tr. 465)

from general practitioners.  It appears that every time Ms. Still sought treatment for

anxiety, the medications provided by her general practitioners controlled her symptoms.

At the administrative hearing, Ms. Still testified that her panic attacks had

worsened and her doctor increased her Xanax.  (Tr. 464)  In May of 2007, Ms. Still

requested an increase in her Xanax.  (Tr. 372)  She reported increased stress from taking

care of her father, who had been diagnosed with terminal cancer.  Dr. Hunt started Ms.

Still on Celexa and increased her Xanax prescription.  (Tr. 372)  At the next appointment,

Ms. Still stated that the Celexa with increased Xanax was helping a lot.  (Tr. 373)  Ms.

Still did not report any further panic attacks, and Dr. Hunt noted that her anxiety and

depression were controlled with medication.  (Tr. 364)

The ALJ's finding that Ms. Still's anxiety caused no more than minimal limitation

in her ability to perform basic mental work activities is supported by substantial evidence

in the record.  Accordingly, the ALJ's finding that her anxiety was "not severe" was not

error.

3.    *Hand Impairments*

Ms. Still briefly argues that the ALJ erred in finding her alleged carpal tunnel

syndrome "not severe."  (#10, p. 12)  It should be noted, however, that there is no

diagnosis of carpal tunnel syndrome in the medical record.

On December 16, 2005, Ms. Still went to the emergency room with complaints of

numbness of both upper extremities.  (Tr. 254-260)  Nerve conduction studies showed

slight entrapment of the right median nerve at the right wrist and mild entrapment of the

left median nerve at the left wrist.  (Tr. 257)  As the ALJ noted, Ms. Still did not have

another complaint regarding her hands until December 8, 2006, when she fell and injured

her shoulder.  (Tr. 15, 154-158)  MRI results of her shoulder were normal.  (Tr. 157)

Ms. Still testified that she could grip tightly with her right hand and would require

surgery.  (Tr. 464)  No surgical recommendation appears in the record.  Ms. Still testified

that she could not afford surgery, which would be a legitimate excuse.  She has not,

however, sought any treatment for this condition since December 16, 2005, even though

she was insured.  She has not worn a splint or requested any treatment for her hands.  Ms.

Still has not established a medically diagnosed impairment related to her hands.

Accordingly, the ALJ's finding in this regard was not error.

4.     *Developing the Record*

In an apparent concession that the current record does not support her claims, Ms.

Still argues that the ALJ failed to adequately develop the record.  (#10, p. 13-15)  An ALJ

has a duty to develop the record fairly and fully, independent of the claimant's burden to

press her case.  *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (citation omitted).

The duty to develop additional evidence arises when medical source evidence is

inadequate to determine disability.  20 C.F.R. § 404.1512(e).  "[R]eversal due to failure to

develop the record is only warranted where such failure is unfair or prejudicial."

*Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir.1995).

10

The record in this case contains almost 300 pages of medical records dating from March 21, 2005, to August 21, 2007.  (Tr. 94-121, 136-396)  In addition, the record contains disability development records and a Physical Residual Functional Capacity Assessment requested by state disability doctors.  (Tr. 122-135)  The record contains an additional 50 pages of medical records regarding treatment received after the administrative hearing.  (Tr. 404-454)  Ms. Still also had an opportunity to provide evidence at the administrative hearing.  (Tr. 455-475)  Despite the evidence in the record, Ms. Still argues that the ALJ should have questioned her physicians and ordered psychiatric testing.  (#10, p. 15)  This argument is not well taken.

Since Ms. Still sought a large portion of her medical treatment through emergency room visits, it is not clear what questioning the physicians on duty at the time would accomplish.  This is especially true considering the detailed notes provided with each emergency room visit.  There is no "treating physician" to contact regarding Ms. Still's hand complaints because she did not seek, or receive, any medical attention for these complaints beyond one hospital visit on December 16, 2005.  (Tr. 254-260)

Ms. Still saw Dr. Hunt fairly regularly.  She saw Dr. Hunt only once, on November 30, 2006, specifically for headaches.  (Tr. 387)  As previously noted, Dr. Hunt did not provide a treatment plan for headaches, but instead referred Ms. Still to a neurologist.  Ms. Still did not pursue this referral.  By May 3, 2007, Dr. Hunt's records stop addressing

headaches altogether.  Ms. Still does not point to any contradictory or ambiguous records in need of clarification.

Dr. Hunt prescribed medication for Ms. Still's anxiety.  He noted that medication controlled her mental conditions.  It does not appear that Dr. Hunt recommended psychiatric testing.

Ms. Still had almost three years from the date of the administrative hearing until the filing of this action to contact physicians and seek psychiatric testing in an attempt to show that the ALJ's alleged failure to do so was unfair or prejudicial.  Ms. Still had nine years from her alleged anxiety diagnosis to the administrative hearing to seek mental health treatment or testing.  There is no allegation that medical records were omitted.  The fact that Ms. Still did not, as far as we know, seek physician statements or psychiatric testing suggests that this evidence would have only minor importance.  *Shannon*, 54 F.3d at 488.  Without any evidence that the ALJ's development of the record was unfair or prejudicial, this argument must fail.

D.      *The ALJ's Credibility Determination*

Under 20 C.F.R. § 404.1529, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are consistent with the objective medical evidence.  An ALJ's conclusions may be upheld if the record as a whole supports them. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

At the administrative hearing, Ms. Still testified that her Crohn's disease caused painful cramping and diarrhea.  (Tr. 462)  Ms. Still testified that she would have at least three flare-ups a month where she would lose ten pounds in a week.  (Tr. 462)  Each flare-up would last a week or more.  (Tr. 462)  In between flare-ups, Ms. Still would still have symptoms.  She testified that anything she ate could make her cramp, and the cramps were like labor pains times ten.  (Tr. 463)  Ms. Still noted that she took pain medication, but stated that it did not work.  (Tr. 463)

The ALJ found Ms. Still's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible.  (Tr. 16-18)  When discrediting a plaintiff's subjective complaints, the ALJ must consider those complaints under the guidelines set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984).  *Polaski* factors include: (1) the plaintiff's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions.  *Id.* at 948.

Ms. Still argues that the ALJ rejected her testimony without support from the evidence.  (#10, p. 15-18)  Although the ALJ did not discuss each *Polaski* factor, it appears he sufficiently recognized and considered them in making his credibility determination.  See *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (ALJ not required to discuss each *Polaski* factor as long as he acknowledges and considers them).

The ALJ noted the *Polaski* factors in his decision.  (Tr. 16-17)  He then discussed Ms. Still's medical history and treatment.  (Tr. 17)  Next, he noted Ms. Still's limited daily activities.  The ALJ also noted that Ms. Still took care of her terminally ill father.  (Tr. 17)

The ALJ recounted medical records showing that Ms. Still weighed 154 pounds on February 21, 2007, and her Crohn's disease was stable.  (Tr. 17)  Ms. Still weighed 158 pounds on February 23, 2006, and 160 pounds at the time of the administrative hearing.  (Tr. 396, 458)  Ms. Still takes issue with the meaning of "stable."  (#10, p. 17)  Considering her allegations, however, no further discussion was necessary.

Ms. Still testified that she had *at least* three flare-ups a month in which she would lose ten pounds in a week, with each flare-up lasting a week or more.  (Tr. 462)  The medical records and Ms. Still's weight directly contradict these statements.  The ALJ did not have to resort to math to show why these allegations were not fully credible.

The record establishes that, despite referrals, Ms. Still never sought treatment from a specialist for her Crohn's disease.[8]  She had not explored the possibility of surgery, or sought an opinion on whether corrective surgery was possible.  (Tr. 469)  Ms. Still testified that even though her husband's insurance covered specialists, she could not

---

[8] She did, however, undergo an ascending colon biopsy on October 11, 2005.  (Tr. 330-332)  Donovan R. Stockdale, M.D., performed this procedure after referral from the emergency room.  (Tr. 331)  The procedure showed possible chronic inflammatory bowel disease or Crohn's disease.  This procedure appears to be the genesis of Ms. Still's Crohn's disease diagnosis.

afford the $100 charge for an office visit.  (Tr. 469)  Despite this alleged lack of

resources, Ms. Still was able to maintain her one-pack-per-day smoking habit.

This Court has no doubt that Ms. Still suffered some cramping and related

symptoms of Crohn's disease.  The ALJ acknowledged these allegations when limiting

Ms. Still to light work.  (Tr. 17)  The ALJ is in the best position to gauge the credibility of

testimony, and those credibility determinations are entitled to some deference.  *Estes v.*

*Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  After reviewing all the evidence, this Court

concludes that the ALJ's credibility determination is supported by substantial evidence in

the record as a whole.

E.     *Residual Functional Capacity*

Ms. Still claims that the ALJ erred in finding that she retained the RFC to perform

the full range of light work.  (#10, p. 19-21)  The ALJ bears the initial responsibility for

assessing a plaintiff's RFC.  *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).  Ms.

Still's RFC is what she can do despite her limitations.  20 C.F.R. § 404.1545 (2003).  In

determining a plaintiff's RFC, the ALJ has a duty to establish, by competent medical

evidence, the physical and mental activity that a plaintiff can perform in a work setting,

after giving appropriate consideration to all of her impairments.  *Ostronski v. Chater*, 94

F.3d 413, 418 (8th Cir. 1996).  The ALJ must determine the Plaintiff's RFC based on all

relevant evidence, including medical records, observations of treating physicians and

others, and Plaintiff's own descriptions of her limitations.  *Baldwin v. Barnhart*, 349 F.3d

549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

Ms. Still makes three arguments in support of this claim.  First, she argues that

the ALJ's RFC determination did not address how she could work on a regular and

continuing basis.  (#10, p. 20)  This argument is not well taken.

An RFC determination is, by definition, the physical or mental capacity "for work

activity on a regular and continuing basis."  See 20 C.F.R. § 404.1545(b) and (c); Social

Security Ruling 96-8p.  The ALJ acknowledged this by stating that Ms. Still's RFC is

"her ability to do physical and mental work activities on a sustained basis."  (Tr. 13)  The

ALJ also noted Ms. Still's allegation that she could not perform any level of work on a

sustained basis (Tr. 18) , but ultimately rejected this allegation.  There was no error in the

ALJ's use of the words "sustained basis" in place of "regular and continuing basis."  It is

clear the ALJ understood that Ms. Still's RFC was not her one-time maximum ability, but

the level she could perform work on a sustained, or regular and continuing, basis.

Ms. Still argues that unpredictable bathroom breaks would preclude her from

working on a regular and continuing basis.  She testified that she got diarrhea when eating

certain things.[9]  (Tr. 463)

---

[9] Her testimony regarding Crohn's disease flare-ups was not credible.  See *supra*
Part III.D.

Ms. Still complained of diarrhea on December 14, 2006.  (Tr. 385)  A comment in the medical record indicates that the diarrhea started after Ms. Still stopped taking her medication.  (Tr. 385)  She did not make any complaints to her doctors about diarrhea in 2007.  (Tr. 364, 366, 368, 370, 372, 373, 375, 377, 379, 381)  Even if Ms. Still's Crohn's disease worsened to the point were she required surgical diversion of the intestinal tract, that fact alone would not preclude work activity.  "[S]urgical diversion of the intestinal tract, including ileostomy and colostomy, does not preclude any gainful activity if you are able to maintain adequate nutrition and function of the stoma."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 5.00 E. 4.  Ms. Still's stable weight showed that she was able to maintain adequate nutrition.  None of the medical records reflect a nonfunctional stoma.

Second, Ms. Still argues that the ALJ failed to consider her alleged "nonsevere" impairments of mental conditions, migraines, and carpal tunnel syndrome when assessing her RFC.  (#10, p. 20)  As discussed, the ALJ found these alleged impairments no more than minimally limited Ms. Still's ability to perform basic work activities.  See *supra* Part III.C.1-3.  Accordingly, there was no work related limitation to include in her RFC assessment.

Finally, Ms. Still argues that the ALJ's RFC determination was flawed because he failed to perform a function-by-function assessment of her abilities.  (#10, p. 20-21)  The Physical Residual Functional Capacity Assessment in the record provided a function-by-function assessment of Ms. Still's physical capacity.  (Tr. 126-133)  This assessment also

17

contains citations to the medical evidence.  (Tr. 133)  In the assessment, Ron Crow, M.D.,

evaluated Ms. Still's ability to lift, carry, walk, stand, sit, push, and pull.  (Tr. 127)  Dr.

Crow also evaluated Ms. Still's postural, manipulative, visual, communicative, and

environmental limitations.  (128-130)  He supported his assessment with references to the

medical record.  (Tr. 133)  Dr. Crow ultimately assessed Ms. Still with the capacity to

perform medium exertional level of work.[10]

The ALJ discussed Ms. Still's medical records and Dr. Crow's assessment.  (Tr.

17)  The ALJ determined that Ms. Still's Crohn's disease would limit her to light work,

instead of medium work as found by Dr. Crow.  (Tr. 17-18)  While the ALJ did not

discuss each functional ability, he referenced a function-by-function assessment and

supported his determination with medical evidence.  Accordingly, there was no error in

the ALJ's RFC determination.

F.      *Medical-Vocational Guidelines*

Ms. Still argues that the ALJ erred in using the Medical-Vocational Guidelines to

find her "not disabled."  (#10, p. 21-23)  In general, if a claimant suffers from

nonexertional impairments that limit her ability to perform a full range of work, the ALJ

must utilize a vocational expert.  *Groeper v. Sullivan*, 932 F.2d 1234, 1235 n. 1 (8th Cir.

---

[10] Medium work "involves lifting no more than 50 pounds at a time with frequent
lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

1991).  Ms. Still argues that her migraines, cramping and pain from Crohn's disease, and anxiety required the ALJ seek vocational expert testimony.

In this case, a vocational expert provided testimony regarding Ms. Still's past work.  (Tr. 473)  The vocational expert did not provide testimony regarding jobs Ms. Still could perform.  Instead, the ALJ relied on Medical-Vocational Rule 202.20 in finding Ms. Still "not disabled."  (Tr. 18-19)

As discussed, the ALJ properly found that Ms Still's headaches and anxiety did not significantly limit her ability to do basic work activities.  See *supra* Part III.C.1-2. Accordingly, they did not diminish Ms. Still's RFC.

The ALJ found that Ms. Still's Crohn's disease was severe, but not as limiting as alleged.  (Tr. 17)  He found that Ms. Still's Crohn's disease and related symptoms prevented the performance of medium work, but that she could still perform the full range of light work.  (Tr. 17-19)

Light work requires a good deal of walking or standing, or when sitting, some pushing and pulling of arm or leg controls.  20 C.F.R. § 404.1567(b).  "To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).  The record provides substantial evidence that Ms. Still could do all of these activities.  (Tr. 127)  She also had no postural, manipulative, visual, communicative, or environmental limitations that would constitute a nonexertional impairment.  (Tr. 128-130)  Ms. Still notes that

difficulty maintaining attention or concentration, or understanding and remembering detailed instructions, could be nonexertional impairments.  Ms. Still, however, had no problem with these activities.  (Tr. 65)

Even if the ALJ had found nonexertional impairments, the use of the Guidelines in this case would not have been error.  "[T]he ALJ may exclusively rely on the guidelines even though there are nonexertional impairments if the ALJ finds, and the record supports the finding, that the nonexertional impairments do not significantly diminish the claimant's RFC to perform the full range of activities listed in the guidelines."  *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993) (citing *Thompson v. Bowen*, 850 F.2d 346, 349-350 (8th Cir. 1988)).  When the ALJ found that Ms. Still's subjective complaints did not diminish her RFC to perform the Guideline-listed activities, he could properly rely on the Guidelines.  *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001).

**IV.**    **Conclusion**:

The Court has reviewed all of the evidence in the record, including all of the medical evidence, the assessment of the consulting physicians, and the hearing transcript. There is sufficient evidence in the record to support the Commissioner's determination that Tina Still was "not disabled" under the Act.  Accordingly, Ms. Still's appeal is DENIED.  The Clerk is directed to close the case.

IT IS SO ORDERED this 6th day of April, 2011.

_____
UNITED STATES MAGISTRATE JUDGE